## ROBINSON *vs.* CULLOM & CO.

[BILL IN EQUITY TO REDEEM LANDS SOLD UNDER MORTGAGE.]

1. *Variance between allegations and proof.*—Where lands are sold under a power of sale in a mortgage, and are conveyed by the purchaser, on the next day, to the mortgagee; and the mortgagor afterwards files a bill to set aside the sales, on the ground that they are pretended and fraudulent, and are therefore void; if the proof does not sustain the allegation of fraud, he can not have relief on the ground that the mortgagee himself, through the nominal purchaser as his agent, was the purchaser at his own sale.

2. *Certainty requisite in allegations of bill.*—Authorities cited as to the sufficiency of an averment that a sale was *pretended*, in a bill seeking to set it aside.

3. *Purchase by trustee or mortgagee, at his own sale.*—A purchase by a trustee or mortgagee, at his own sale, is not void, but voidable only, at the instance of the *cestui que trust* or mortgagor, expressed within a reasonable time; and under the circumstances of this case, (the bill not having been filed until after the lapse of more than four years and a half,) the delay was held fatal to the relief sought.

APPEAL from the Chancery Court at Montgomery. Heard before the Hon. N. W. COCKE.

THE bill in this case was filed, on the 25th October, 1860, by Raymond Robinson, against Cullom & Co., (a partnership composed of Smith Cullom and Lovick P. Butler,) and several other persons; and sought to set aside a sale of certain lands, under a mortgage executed by said Robinson to said Cullom & Co.; and, to that end, it prayed an account of the mortgage debt, and of the rents and profits of the mortgaged premises while in the possession of the defendants, and a redemption of the mortgaged lands, or, alternately, if the mortgage debt was not paid and satisfied, a foreclosure of the mortgage to satisfy the balance due. The mortgage was dated the 15th day of February, 1853; conveyed certain lands in Autauga county, with several slaves, to secure the payment of a bill of exchange for six thousand seven hundred dollars, payable twelve months after date, and dated the 15th Februry, 1853; and contained a power of sale, if default were made in the payment of the bill at maturity. The mortgaged lands contained valuable pine timber, and a saw-mill was situated on them. Under the power of sale contained in the mortgage, the lands were sold by the mortgagees, on the 3d March, 1856, and were bid off by John W. Hughes, as the highest and best bidder, at the price of fifteen hundred dollars; and the mortgagees thereupon executed to him a conveyance of the lands. On the next day, (4th March, 1856,) said John W. Hughes and wife conveyed the lands to said Cullom & Co., on the consideration of fifteen hundred dollars; and Cullom & Co. afterwards conveyed to the other defendants to the bill. The plaintiff continued in the possession of the lands, after the execution of the mortgage, after the sale under the mortgage, and until after the sale by Cullom & Co. to the other defendants. The mill was burned down, soon after the execution of the mortgage; but was re-built, partly by the complainant, and partly by the purchasers from Cullom & Co.

The following are the material allegations of the bill, as to the sales and conveyances between Hughes and Cullom &

Co.: " 2. Afterwards, to-wit, on the 3d March, 1856, said Cullom & Co. pretended to sell said lands, under the power of sale given to them in said mortgage, and executed a conveyance thereof to John W. Hughes, at and for the price of fifteen hundred dollars; a copy of which conveyance is hereunto attached," &c. " Shortly thereafter, to-wit, on the next day, the 4th day of March, 1856, said Hughes and his wife re-conveyed said lands to said Cullom & Co., at and for the price aforesaid, fifteen hundred dollars." " 3. Your orator avers, that said sale from Cullom & Co. to said John W. Hughes was pretended and fraudulent; that said Hughes, in buying said land, acted as the agent of said Cullom & Co., and for their benefit, or at their instance and request, and made the purchase for them; that said Hughes paid no money to said Cullom & Co. for said land, and said Cullom & Co. paid no money to him, as the consideration for said re-conveyance to them; that, if there was any pre- tense of payment, the money, or other thing of value, if any, which was paid or delivered by said Hughes to said Cullom & Co. as the price or purchase-money for said land, was immediately, or shortly thereafter, paid back by them, or re-delivered to said Hughes. Your orator further avers, that there was an understanding and agreement, by and between said Cullom & Co. and said Hughes, made before said sale or re-sale took place, to the effect that said Cullom & Co. should convey said lands to said Hughes, and that said Hughes should re-convey to them, and that no money, or other thing of value, should be paid by either party to the other, as or for the purchase-money of said land." " 4. Your orator further avers, that said sale by Cullom & Co. was made at public auction, after the notice, and at the place specified in said mortgage; that said Cullom & Co. applied to said Hughes, before said sale took place, and requested him to bid off the land for them at the sale; that said Hughes consented to said request, and, in pursuance thereof, bid off said land at said sale, at the price of fifteen hundred dollars; that no part of the purchasem-oney was paid by said Hughes; that said original conveyance and re-conveyance were thereupon executed and delivered, in pursuance of said request and agreement,

and for the purpose of enabling said Cullom & Co. to hold said land, or the title thereto, adversely to your orator, and for the purpose of depriving and defrauding him of his right, as against Cullom & Co., to have said mortgage foreclosed, and said land sold for the purposes therein expressed." "5. Your orator is advised, and so charges, that said sales from said Cullom & Co. to said Hughes, and from said Hughes to said Cullom & Co., and the said conveyances executed by them respectively for said land, were null and void; and that the respective rights and privileges of your orator, and of said Cullom & Co., under and by virtue of said mortgage, were not thereby affected, changed, or destroyed in any manner whatever."

The prayer of the bill was as follows: "Your orator prays, that said Cullom & Co. may be declared to be trustees, and that they held, and still hold, the title to said lands for the purposes expressed in said mortgage; that each and all of the conveyances hereinbefore mentioned, except said mortgage, be set aside, held for naught, and ordered to be given up to be cancelled; that said defendants, and each and every one of them, and all persons claiming through or under any or either of them, be enjoined and restrained from cutting the timber on said land, or using, or occupying the mill, houses, building, or land; that it be referred to the register, as master, to ascertain the balance, if any, due on account of the indebtedness secured by said mortgage, and to take and state an account of the rents, profits, and timber cut from said lands; and that the amount found due to your orator on account thereof, as for as the same may be necessary, be applied to the satisfaction and discharge of said mortgage debt; that, if the said mortgage debt is not thereby satisfied and discharged in full, said mortgage be foreclosed, and said land sold for the purposes therein specified; that, if said mortgage debt is satisfied and discharged as aforesaid, said mortgage be then cancelled, and your orator be let into the possession of said lands and tenements; and for such other and further relief as the nature of the case may require," &c.

Answers on oath were waived, as to all the defendants.

A joint answer was filed by the several defendants who claimed under conveyances from Cullom & Co., in which they asserted the validity of all the sales and conveyances mentioned in the bill; denied that the sale by Cullom & Co. to Hughes was fraudulent or pretended, or that Hughes bought at the mortgage sale as the agent of Cullom & Co., or for their benefit, or under any agreement or arrangement with them; averred ignorance of the charge that no money passed between Cullom & Co. and Hughes, and required strict proof thereof. They further averred, that the complainant, before the sale under the mortgage, consented that Cullom & Co. might become the purchasers at the sale; that he recognized the right of Cullom & Co. to the mortgaged premises, after the sale, as perfect and absolute, and performed work on the mill for them, and received from them payment for his work; and that their subsequent purchases from Cullom & Co. were induced by his acquiescence in the sale. They also set up these facts by way of plea in bar to the relief sought, and incorporated in their answer a demurrer to the bill, for want of equity, on account of the complainant's laches and delay, and on other grounds.

The answer of Cullom & Co. was as follows: " These defendants have read the answer of their co-defendants, and adopt the same as their answer, as well as the pleas and demurrers therein set forth. They expressly deny that said Hughes bought said lands and mill for them, but say that, after he bought the same, they agreed to take them from him. They further answer, that if said Hughes considered that he was buying the said premises for them, that it was expressly agreed between them and said complainant that they might, either by themselves or their agent, buy said lands at the mortgage sale; and they aver, that they endeavored, after their purchase from said Hughes, to get complainant to take said lands off their hands at the price it had cost them, and the amount due on the judgments they hold against him, as set forth in the answer of their co-defendants; but complainant utterly failed and refused so to do, and, on the contrary, consented to the sale of the

same to said Zeigler & Thompson, and delivered possession to them, and encouraged them, as the owners thereof, to go on and improve said mills, as he did these defendants while they owned the same, and received from them $141 60 for labor performed on said mills. These defendants aver, that they derived no profit from said premises; that all the profits made while they owned said mill they allowed said complainant to receive, as a favor, under the hope that he would be able to redeem said land by a re-purchase from them, which he declined to do. These defendants deny all fraud and combination," &c.

The complainant took the deposition of said John W. Hughes, who testified as follows: "I bought the land at the instance of S. Cullom. Butler never said anything to me in regard to it. I can't detail the conversation with Cullom; but the substance of it was, that I was to purchase the land, and convey it back to Cullom & Co. Cullom made no further proposition to me than that I have just stated. I agreed to make the purchase according to that understanding. My reply was, that I would comply with their request. There was no further agreement. I have given the substance of the conversation, or understanding. I did not pay anything for the land, and nothing was paid to me in consideration of the re-conveyance." Several witnesses were examined on the part of the defendants, who testified to the value of the premises, the cost of re-building the mill, the value of the timber cut from the land, and the fact that the complainant, in re-building the mill, professed to act as the agent of Cullom, or of Cullom & Co.

On the final hearing, on pleadings and proof, at the spring term, 1867, the chancellor dismissed the bill, but without assigning any reason for his decree; and his decree is now assigned as error.

WATTS & TROY, for the appellant.
JOHN A. ELMORE, and W. P. CHILTON, contra.

BYRD, J.—The counsel for appellant, in their brief, remark, that they "are unable, after carefully examining the

record, to discover upon what ground the chancellor dismissed the bill." The cause was submitted for hearing upon the pleadings and proof. The answers contain a demurrer to the bill, and we presume that the chancellor dismissed the bill on the pleadings and proofs, as the 66th rule of practice requires a demurrer to be disposed of at the first term after it is filed, without waiting for the cause to be ready on the proof; and the record shows that the cause was continued after the demurrer was filed, and it does not show that any notice was ever taken of it by the counsel or the court. We do not, therefore, see proper to take any notice of the demurrer, upon an appeal by the complainant in the bill. Although the counsel have not discovered the ground upon which the bill was dismissed, nor the chancellor pointed out any; yet, if we can discover any upon which it ought to have been dismissed, it is just and reasonable to presume that he dismissed it upon that ground, or some other good ground which we have not detected.

1. It is apparent from the third and fifth sections of the bill, and from the whole scope of it, that the appellant denies the validity of the sale by Cullom & Co. to Hughes; and that he founds his right to the remedy he seeks, in part, upon the averment that that sale "was *pretended* and fraudulent;" and upon the charge, "that said sales from said S. Cullom & Co. to said Hughes, and from said Hughes to said S. Cullom & Co,, and the conveyances executed by them respectively for said land, * * * were null and void." The evidence is not sufficient to satisfy us that the sale was fraudulent and void. The answers of the defendants are to be treated as mere pleading, as appellant waived their verification by oath. If they had been under oath, they would have been subject to a just and severe criticism, especially when their contents are compared with the evidence. As the appellant does not make out by proof that the sale by the mortgagees was fraudulent, the chancellor properly dismissed the bill, so far as any remedy was predicated on that ground.—*Pierce v. Brassfield*, 9 Ala. 573; *Cameron v. Abbott*, 30 Ala. 416; *Billingslea v. Ware*, 32 Ala.

415; *Walthall v. Rives, Battle & Co.*, 36 Ala. 91; 38 Ala. 329; *Swift v. Swift*, 36 Ala. 147.

2. In the case of *Charles v. DuBose*, (29 Ala. 367,) this court notices, without deciding, the sufficiency of the allegation, in a bill seeking to set aside a sale, that "the defendant *pretended* there had been a sale." We do not intend now to intimate any opinion whether the frequent use of the word *pretended* in this bill meets the requirements of the rules governing pleadings in equity; but, as its use is of frequent occurrence in bills of late years, we merely refer to the following authorities on the subject : 1 Dan. Ch. Pr. 411–12, and notes; *Bliss v. Anderson*, 31 Ala. 612; Story's Eq. Pl. §§ 32, 241; *Spence v. Duren*, 3 Ala. 251; *Holman v. Bank of Norfolk*, 12 Ala. 369.

3. A trustee in a deed of trust, or a mortgagee, with a power of sale, may purchase at his own sale under the conveyance, and the sale is not void, but voidable at the instance of the beneficiary, if in any reasonable time he chooses to avoid it.—*Charles v. DuBose*, 29 Ala. 367; *Eastern Bank v. Taylor*, at June term, 1867. Conceding that the mortgagees were purchasers at their own sale, and that the bill seeks to set aside the sale on that ground ; yet, under the authorities cited, and all the facts of this case, we are satisfied that the appellant did not apply within a reasonable time to have the sale set aside.—See, also, *Gentry v. Rogers*, 40 Ala.

The chancellor therefore committed no error in the decree rendered, and his decree is affirmed.